

Paul Landry
*Underwriting Specialist*
1 Tower Square
Hartford, CT 06183
860-277-8057 TEL

August 29, 2016

The City of Jackson Mississippi
Attention: Tony Yarber

Re: Discharge Demand

Dear Mayor Yarber,

The City of Jackson Mississippi (the "Indemnitor") executed a General Contract of Indemnity, dated on or about May 15, 2007 (the "GCI") for the benefit of Travelers Casualty and Surety Company of America for itself, affiliates, parents and subsidiaries (the "Company"), an executed copy of which is enclosed. As set forth in paragraph number 5 of the GCI, the Indemnitor agreed to "procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to the Company in its sole discretion" within thirty (30) days of receipt of the Company's written demand or, if such discharge is not obtained, provide the Company with an irrevocable letter of credit in form, content and issued by a bank acceptable to the Company within an additional seven (7) days.

In accordance with the provisions of the GCI, demand is hereby made upon the Indemnitors to provide the Company with either: (i) the full and complete discharge of the Company from the Bond number 101023258 (the "Bond") noted on Exhibit A issued by the Company on behalf of Indemnitors no later than **October 1, 2016**, or (ii) with an irrevocable letter of credit in an amount equal to 100% of all undischarged liability under the Bond no later than **October 8, 2016**. If a letter of credit is to be provided, it shall be provided in form (see copy enclosed), content and by a bank acceptable to the Company. As of the date of this Discharge Demand, the undischarged liability under the Bond is One Million Two Hundred Eighty-Five Thousand Dollars and 00/100 ($1,285,000). Therefore, if an irrevocable letter of credit is to be provided, it should be in the amount of One Million Two Hundred Eighty-Five Thousand Dollars and 00/100 ($1,285,000). As a courtesy and business accommodation to the Indemnitor at this time we are requesting discharge or collateral with respect to only Bond 101023258. However, please be advised that all rights and defenses which are or may become available to Travelers are, and shall continue to remain fully and strictly reserved whether mentioned in subsequent communications or not, including the right to demand the discharge or receipt of collateral in an amount equal to 100% of the total undischarged liability with respect to all Bonds issued to or to be issued subsequent to this correspondence.

Sample language to release the Company from issued Bond is enclosed. If the Company is to be discharged from liability by a release from the Bond, then the enclosed language should be completed for the Bond to be



EXHIBIT "C"

Page 2

released, printed on letterhead of the Bond Obligee and signed by an authorized representative of the Bond Obligee.

If an irrevocable letter of credit will be provided, please have the issuing bank send it to the following address:

> Travelers Bond
> Attn: Anna Nowik
> National Resources, Collateral Processing
> One Tower Square – 2SHS2
> Hartford, CT 06183

Please note, should the undischarged liability subsequently increase, Indemnitors are required to provide an irrevocable letter of credit to cover 100% of the increased liability. All rights and defenses which are or may become available to Travelers are, and shall continue to remain fully and strictly reserved whether mentioned in subsequent communications or not, including the right to demand the discharge or receipt of collateral to cover 100% of the total undischarged liability with respect to all Bonds issued to or to be issued subsequent to this correspondence.

Nothing herein shall be construed as a waiver of any rights and/or remedies of the Company, including without limitation those contained in the GCI and any and all rights are specifically reserved herein.

In the event you have questions you may contact me at the telephone number above.

Sincerely,

*[signature]*

Paul Landry |Underwriting Specialist | Commercial Surety
Travelers Bond & Specialty Insurance
One Tower Square | S203A
Hartford, CT 06183
Work: 860-277-8057

| | |
|---|---|
| **General Contract**<br>**Of Indemnity**<br>(Form BP) | TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA<br>Hartford, Connecticut 06183 |

We, the undersigned, hereinafter referred to, individually and/or collectively, as "Indemnitors," hereby request, have requested and/or will request TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, any of their present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns, hereinafter referred to, individually and/or collectively, as "Company," to execute or procure bonds, undertakings, guarantees, and/or contractual obligations, including renewals and extensions thereof, whether before or after the date of this Agreement, and bonds and undertakings for which Company has obligations as a result of an asset purchase, acquisition, merger or like transaction, hereinafter referred to, individually and/or collectively, as "Bond(s)." As an inducement therefore we make the following representations of fact, promises and agreements:

REPRESENTATIONS OF FACT:

1. In the transaction of business one, some or all of the Indemnitors are required, or may desire to give such Bond(s).

2. Indemnitors have a substantial, material and beneficial interest (a) in the obtaining of Bond(s) by any of the Indemnitors and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bond(s) pursuant to this General Contract of Indemnity, hereinafter referred to as "Agreement." It is understood that the purpose of this Agreement is to induce Company to furnish Bond(s); however, Company is under no obligation to furnish Bond(s) to Indemnitors.

3. Indemnitors have the full power and authority to execute, deliver and perform this Agreement and to carry out the obligations stated herein. Indemnitors further acknowledge and agree that (a) the execution, delivery and performance of this Agreement by such Indemnitors, (b) the compliance with the terms and provisions hereof, and (c) the carrying out of the obligations contemplated herein, do not, and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of such Indemnitors, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Indemnitors, or any other agreement binding upon Indemnitors, or constitute a default thereunder.

PROMISES AND AGREEMENTS: In consideration of the furnishing of any such Bond, the forbearance of cancellation of any existing Bond(s) by Company, the assumption of obligations by Company of any Bond, and for other valuable consideration, Indemnitors hereby jointly and severally promise and agree as follows:

1. To pay all premiums for each Bond, as they fall due, until Company has been provided with competent legal evidence that the Bond has been duly discharged.

2. To indemnify and exonerate Company from and against any and all loss, cost and expense of whatever kind which it may incur or sustain as a result of or in connection with the furnishing of Bond(s), the assumption of obligations by Company of Bond(s), and/or the enforcement of this Agreement, including unpaid premiums, interest, court costs and counsel fees, and any expense incurred or sustained by reason of making any investigation, hereinafter referred to as "Loss." To this end Indemnitors promise:

    (a) To promptly reimburse Company for all sums paid on account of such Loss and it is agreed that (1) originals or photocopies of claim drafts, or of payment records, kept in the ordinary course of business, including computer printouts, verified by affidavit, shall be prima facie evidence of the fact and amount of such Loss, and (2) Company shall be entitled to reimbursement for any and all disbursements made by it, under the belief that it was liable, or that such disbursement was necessary or expedient.

    (b) To deposit with Company, on demand, the amount of any reserve against such Loss which Company is required, or deems it prudent to establish whether on account of an actual liability or one which is, or may be, asserted against it and whether or not any payment for such Loss has been made.

3. This Agreement shall apply to any and all Bond(s) furnished as follows:

    (a) If Company executes the Bond(s), procures the execution of Bond(s) by other sureties, executes Bond(s) with co-sureties and/or obtains reinsurance;

    (b) For or on behalf of any or all of the following:

        (1) One, some or all of the Indemnitors;

        (2) Any joint venture or other form of common enterprise in which Indemnitors were members at the time the Bond(s) were furnished;

        (3) Any present or future affiliate and/or subsidiary of Indemnitors;

        (4) Any third party at the request of Indemnitors, their subsidiaries and/or affiliates.

4. (a) The validity and effect of this Agreement shall not be impaired by, and Company shall incur no liability on account of, and Indemnitors need not be notified of:

        (1) Company's failure or refusal to furnish Bond(s), including final Bond(s) where Company has furnished a bid Bond;

  (2) Company's consent or failure to consent to changes in the terms and provisions of any Bond, or the obligation or performance secured by any Bond;

  (3) The taking, failing to take, or release of security, collateral, assignment, indemnity agreements and the like, as to any Bond;

  (4) The release by Company, on terms satisfactory to it, of any Indemnitors; or

  (5) Information which may come to the attention of Company which affects or might affect its rights and liabilities or those of any of the Indemnitors.

 (b) The validity and effect of this Agreement shall not be impaired by and Company shall incur no liability on account of the cancellation or termination of any Bond(s).

5. (a) Indemnitors shall, within thirty (30) days of receipt of Company's written demand ("Discharge Demand"), procure the full and complete discharge of the Company from any and all Bond(s) by providing competent written evidence of discharge satisfactory to Company, in its sole discretion. If Indemnitors fail to provide the aforementioned discharge Indemnitors shall, within an additional seven (7) days, provide Company with an irrevocable letter of credit in form, content and by a bank acceptable to Company. The letter of credit shall be in an amount equal to the total of all undischarged liability under said Bond(s), which liability shall be determined at the time of the Company's Discharge Demand. Collateral or letters of credit previously provided to Company may be utilized to establish compliance with this provision. If the undischarged liability subsequently increases, then it is the Indemnitors' responsibility to ensure continued compliance with this provision at all times.

 (b) Indemnitors waive, to the fullest extent permitted by law, each and every right that they may have to contest this requirement. Indemnitors stipulate and agree that Company will not have an adequate remedy at law should Indemnitors fail to post said letter of credit and further agree as a result that Company is entitled to specific performance of this provision. Company's failure to act to enforce its right to specific performance shall not be construed as a waiver of that right, which right may be enforced at any time at the Company's sole discretion.

 (c) Indemnitors further agree that this requirement for a letter of credit shall not limit or be deemed a waiver of the Company's other rights, which it may exercise in its sole discretion, under this Agreement or otherwise to cancel Bond(s), to demand collateral or letters of credit, or to take any other actions Company deems necessary and/or prudent, in its sole discretion, to mitigate actual or potential Loss under any and all Bond(s) written in accordance with this Agreement. The exercise of such additional rights shall not be contingent upon the Company's enforcement of this provision.

6. Any letter of credit to be provided to Company shall be sent via overnight delivery to the following address: St. Paul Travelers Bond, Attention: Bond Finance - Collateral Processing, One Tower Square, Hartford, Connecticut 06183.

7. Company shall have the right, in its sole discretion, (a) to deem this Agreement breached should any Indemnitor become involved in any agreement or proceeding of liquidation, receivership, bankruptcy, insolvency or creditor assignment, whether voluntarily or involuntarily, or should any Indemnitor, if an individual, die, or be convicted of a felony, become a fugitive from justice, or for any reason disappear and cannot immediately be found by Company by use of usual methods, and (b) to adjust, settle, compromise or defend any claim, demand, suit or judgment upon any Bond(s).

8. If Company has or obtains collateral or letters of credit, Company shall not have any obligation to release collateral or letters of credit or turn over the proceeds thereof until it shall have received a written release in form and substance satisfactory to Company with respect to each and every Bond. Any collateral or letters of credit provided to Company by any Indemnitor or any third party, or the proceeds thereof, may be applied to any Loss.

9. Indemnitors also understand and agree that their obligations remain in full force and effect for any Bond(s) issued pursuant to this Agreement, notwithstanding that the entity on whose behalf Bond(s) were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

10. This Agreement shall remain in full force and effect until terminated. Indemnitors may only terminate participation in this Agreement by providing written notice to Company of Indemnitors' intent to terminate. Such notice shall be addressed to St. Paul Travelers Bond, Attention: Senior Vice President Commercial Surety, One Tower Square, Hartford, Connecticut 06183. Such notice of termination shall become effective thirty (30) days after Company's receipt of the same. The obligations and liability of Indemnitors giving such notice shall thereafter be limited to Bond(s) furnished before the effective date of the notice, which liability shall include any Bond(s) which were originally issued prior to the effective date of notice and renewed or otherwise extended subsequent to the notice or effective date of termination.

11. Whereas, the obligee or beneficiary under certain Bond(s) may make a demand for payment ("Demand") against the Bond(s). When such Demand is made, Company must pay the amount of the Demand, not to exceed the penal sum of the Bond(s), as well as all necessary fees, within the time period required by the Demand. Under such Bond(s), Company, with the knowledge and consent of the Indemnitors, has expressly waived all defenses to making such payment. If the Indemnitors receive notice from Company that a Demand has been made against the Bond(s) by the obligee or beneficiary, Indemnitors will, at least three (3) business days before payment of such Demand is due the obligee, pay Company the full amount of the Demand, which amount shall not exceed the penal sum of the Bond, as well as all necessary fees. Such payment will be made by wire transfer or otherwise in immediately available funds to the bank account specified in the notice provided to the Indemnitors by Company. The Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make payment to Company as herein provided shall cause the Indemnitors to be additionally liable for any and all costs and expenses, including attorney's fees, incurred by Company in enforcing this Agreement, together with interest on unpaid amounts due Company. Interest shall accrue, commencing the date Company pays the amount of the Demand, at 130%

of the prime rate of interest in effect on December 31 of the previous calendar year as published in the Wall Street Journal. Indemnitors stipulate and agree that the Company will suffer immediate irreparable harm and will have no adequate remedy at law should Indemnitors fail to perform this obligation, and therefore Company shall be entitled to specific performance of this obligation.

12. Indemnitors hereby expressly authorize Company to access credit records and to make such pertinent inquiries as may be necessary from third party sources for underwriting purposes, claim purposes and/or debt collection. To the extent required by law, Company will, upon request, provide notice whether or not a consumer report has been requested by Company, and if so, the name and address of the consumer reporting agency furnishing the report.

13. In the event of a claim or notice of a potential claim, Company shall have the right, at all times, to free access to the books, records, and accounts of the Indemnitors for the purpose of examining the same.

14. Company may furnish copies of any and all statements, agreements, financial statements and any information which it now has or may hereafter obtain concerning Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance.

15. A duplicate or facsimile copy or electronic reproduction of the original document shall have the same force and effect as the original.

16. This Agreement may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute one instrument. Each counterpart may consist of a number of copies hereof, each signed by less than all, but together signed by all, of the parties hereto.

17. If any provision or portion of this Agreement shall be unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as though such provision or portion were omitted.

18. This Agreement is in addition to and not in lieu of any other agreements and obligations undertaken in favor of Company, whether now existing or entered into hereafter.

19. The rights and remedies afforded to Company by the terms of this Agreement can only be impaired by a written rider to this Agreement signed by an authorized employee of the Company.

20. Company's failure to act to enforce any or all of its rights under this Agreement shall not be construed as a waiver of these rights.

21. The date of this Agreement shall be the earliest date any Indemnitor executes this Agreement.

22. Special Provisions: n/a

WE HAVE READ THIS CONTRACT OF INDEMNITY CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF, WE THE INDEMNITORS HAVE SET OUR HANDS AND FIXED OUR SEALS AS SET FORTH BELOW.

### If Indemnitor a Corporation, Limited Liability Company or Partnership, sign below:

Instructions: If the entity is: 1) a corporation the secretary and an authorized officer should sign on behalf of the corporation, 2) a limited liability company the manager(s) or member(s) should sign on behalf of the LLC, or 3) a partnership the partner(s) should sign on behalf of the partnership. Two signatures are required for all entities and all signatures must be notarized and dated. Please provide the entity's federal tax identification number on the line provided.

Each of the undersigned hereby affirms to Company as follows: I am a duly authorized official of the Indemnitor on whose behalf I am executing this Agreement. In such capacity I am familiar with all of the documents which set forth and establish the rights which govern the affairs, power and authority of such entity including, to the extent applicable, the certificate or articles of incorporation, bylaws, corporate resolutions and/or partnership, operating or limited liability agreements of such entity. Having reviewed all such applicable documents and instruments and such other facts as deemed appropriate, I hereby affirm that such entity has the power and authority to enter into this Agreement and that the individuals executing this Agreement on behalf of such entity are duly authorized to do so.

City of Jackson, Mississippi
(Indemnitor Name)

_____ (Seal)
(First Signature)
Frank E Melton, Mayor
(Print or Type Name and Title)                (Date)

(Federal Tax ID)

_____ (Seal)
(Second Signature)
Cedric Morgan, City Clerk    5-15-07
(Print or Type Name and Title)                (Date)

ACKNOWLEDGEMENT
STATE OF MISSISSIPPI           County of HINDS

On this 15th day of May, 2007, before me personally appeared Frank E. Melton, known or proven to me to be the Mayor of the City of Jackson, MS of the entity executing the foregoing instrument ("Entity") and Cedric Morgan, known or proven to me to be the City Clerk of the City Jackson, MS of the Entity,

and they acknowledged said instrument to be the free and voluntary act and deed of said Entity, for the uses and purposes therein mentioned and on oath stated that the seal affixed is the seal of said Entity and that it was affixed and that they executed said instrument by authority of the Entity. IN WITNESS WHEREOF, I have hereunto set my hand and affixed my OFFICIAL SEAL the day and year first above written.

                                      *Jaime M. Collins*
                                      Notary Public residing at
                                      (Commission expires 4-27-08 )

Page 1 of 2 CS-40

## (This form should be printed and executed on the Obligee's letterhead)

### RELEASE

_____ ("Obligee") does hereby fully, finally and unconditionally release and forever discharge Travelers Casualty and Surety Company of America, its affiliates and subsidiaries (collectively, "Travelers") from any and all past, present and future liability by reason of or in connection with Travelers' issuance of Bond Number _____ issued on behalf of the principal _____ (the "Bond"). Contemporaneous with the execution of this document, the Bond is fully and unconditionally discharged and no longer in force and effect.

The undersigned further represents and warrants that he or she has the authority to execute this Release on behalf of the Obligee and to bind the Obligee hereunder. In addition, in the event there is any inconsistency between the terms of this Release and any and all other documents, the Obligee hereby agrees that the terms of this Release shall control. Please find enclosed the original Bond which is hereby returned to Travelers as null and void.

Date:_____

[Obligee]

By:_____
Its:_____

**This document must be executed before a Notary Public and include the attached Notary Acknowledgment.**

| | |
|---|---|
| State of _____<br><br>County of _____<br><br>On _____ before me, _____,<br>    DATE         NAME, TITLE OF OFFICER - E.G. JANE DOE, NOTARY PUBLIC<br><br>personally appeared _____,<br>                                  NAME(S) OF SIGNER(S)<br><br>☐ personally known to me -OR-   ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.<br><br>WITNESS my hand and official seal.<br><br>_____<br>Signature of Notary | **CAPACITY CLAIMED BY SIGNER**<br><br>Although statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the document.<br><br>☐ INDIVIDUAL<br><br>☐ CORPORATE OFFICER(S)<br><br>_____<br>TITLE(S)<br><br>☐ PARTNER(S)   ☐ LIMITED<br>                     ☐ GENERAL<br><br>☐ ATTORNEY-IN-FACT<br><br>☐ TRUSTEE(S)<br><br>☐ GUARDIAN/CONSERVATOR<br><br>☐ OTHER:_____<br><br>_____<br>_____ |

**BANK LETTERHEAD (Issuing Bank)**

## CLEAN IRREVOCABLE LETTER OF CREDIT

DATE

On all communications please refer to:
Letter of Credit Number: _____
Amount (USD)_____
Account Party:
Principal's Name_____
(Only necessary to include the Principal's name if the account. Party has different name)

TO:   Beneficiaries
Travelers Casualty and Surety Company of America, for itself, and on behalf of its parents, affiliates and subsidiaries
One Tower Square, H.O. Bond, 7SHS2
Hartford, CT 06183
Attention: Collateral Processing, H.O. Bond, 7SHS2
(Branch: _____ Code: _____)

Ladies and Gentlemen:

We hereby establish this CLEAN, IRREVOCABLE LETTER OF CREDIT ("Credit") in your favor as Beneficiaries (referred to herein as "you" or "your") and authorize you to draw on us up to the aggregate amount of _____ United States Dollars ($_____) effective immediately. This Credit is issued, presentable and payable at our office at _____ (issuing bank's address here-must be US address). After this Credit has been issued, it cannot be revoked, amended or reduced without your written acknowledgment and consent.

The term "Beneficiaries" includes any successor by operation of law of the named Beneficiaries including, without limitation, any liquidator, rehabilitator, receiver or conservator.

We hereby undertake to fully and promptly honor each of your sight drafts drawn on us under this Credit, for all or any part of this Credit, if presented at our office specified in paragraph one on or before the close of business on the expiration date of _____ or any automatically extended expiration date. If you so choose, you will be able to draw on this Credit more than once, without amendment, provided that the sum of the amounts that you have drawn does not exceed the full amount of this Credit.

This Credit sets forth in full the terms of our undertaking, and such undertaking shall not in any way be modified, amended or amplified by reference to any note, document, instrument or agreement referred to herein or in which this Credit is referred to or to which the Credit relates and any such reference shall not be deemed to be incorporated herein by reference. The obligation of _____ (insert name of the issuing bank here) under this Credit is not subject to any condition or qualification, and is the individual obligation of _____ (insert name of issuing bank here), and is in no way contingent upon reimbursement with respect thereto or upon our ability to perfect any lien, security interest or any other reimbursement.

It is a condition of this Credit that it shall be deemed to be automatically extended, without amendment, for successive one year periods from the stated expiration date, or any future expiration date, unless we have notified you in writing by registered mail or overnight courier, not less than sixty (60) days prior to the then relevant expiration date, that we elect not to extend this Credit. In that event, you may draw your sight draft on us under this Credit on or before the close of business on the then relevant expiration date, up to the full amount then available hereunder. Our notice of election not to extend shall be sent by registered mail or overnight courier to Travelers Casualty and Surety Company of America to the attention of "Collateral Processing, H.O. Bond, 7SHS2."

We hereby represent and affirm that the execution of this Credit will not constitute a violation of any law or regulation which may limit the amount of credit which can be extended by this bank to any single borrower or customer.

This Credit is subject to and governed by the Uniform Customs and Practice for Documentary Credits, 2007 Revision, International Chamber of Commerce (Publication No. 600) with the express exception that, if this Credit expires during an interruption of business as described in Article 36 of said Publication 600, _____ (insert name of the issuing bank here) hereby specifically agrees to effect payment if this Credit is drawn against within 30 days after the resumption of business.

Yours very truly,

_____ (ISSUING BANK)

BY: _____ (AUTHORIZED SIGNATURE)

_____ (PRINT NAME AND TITLE)

_____ (PHONE NUMBER)

(S-2428) 10-07-UCP600